ALBERTO E. SANDOVAL RIVERA, demandante y recurrido, *v.* CARIBE HILTON INTERNATIONAL h/n/c HOTEL CARIBE HILTON, demandado y peticionario.

*Número:* CC-97-445          *Resuelto:* 25 de octubre de 1999

*Juan Rafael González Muñoz*, de *González Muñoz & Quiñones Tridas*, y *Alberto Omar Jiménez Santiago*, abogados de la parte peticionaria; *Anabelle Rodríguez* y *Graciela J. Belaval*, de *Martínez, Odell & Calabria*, abogadas de la parte recurrida.

## SENTENCIA

### (En reconsideración)

El 24 de abril de 1991, el peticionario en reconsideración, Alberto Sandoval Rivera, presentó una demanda sobre discrimen por razón de edad y otras causas de acción contra su patrono, Caribe Hilton International.

Luego de los trámites de rigor, el foro de instancia determinó que Sandoval había sido despedido sin justa causa, por lo que le concedió los beneficios de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a-185m). Dicho foro, sin embargo, denegó la reclamación por despido discriminatorio por razón de edad.

El 30 de junio de 1997, el Tribunal de Circuito de Apelaciones confirmó el dictamen de instancia en cuanto al despido injustificado de Sandoval, pero revocó su dictamen de desestimación de la causa de acción por discrimen por

razón de edad. Determinó que Sandoval tenía derecho a la indemnización que provee la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) por despido discriminatorio por razón de edad.

El 29 de junio de 1998, mediante una sentencia, revocamos el dictamen del foro apelativo en lo relativo a la causa de acción por discrimen y reinstalamos el del foro de instancia.

Sandoval entonces acudió ante nos en reconsideración.

Luego de un reexamen cuidadoso de todo el expediente del caso, una mayoría del Tribunal coincide en cuanto a que en el caso de autos: (1) quedó debidamente activada una presunción de despido por discrimen por razón de edad a favor de Sandoval, y (2) que el patrono Caribe Hilton International no rebatió la presunción referida. Por lo anterior, el juzgador venía obligado a aceptar la existencia del hecho presumido y dictar sentencia conforme a ello.

Por los fundamentos expuestos, *se reconsidera nuestro dictamen anterior, se deja sin efecto nuestra Sentencia de 29 de junio de 1998 y se confirma la del Tribunal de Circuito de Apelaciones de 30 de junio de 1997. Se devuelve el caso al foro de instancia para que continuen los procedimientos conforme a lo aquí resuelto.*

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad, a la que se unió el Juez Asociado Señor Hernández Denton. La Juez Asociada Señora Naveira de Rodón emitió una opinión concurrente, a la que se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Negrón García emitió una opinión disidente. Los Jueces Asociados Señores Rebollo López y Corrada Del Río disintieron sin opinión escrita.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Opinión concurrente de la Juez Asociada Señora Naveira de Rodón, a la cual se une el Juez Presidente Señor Andréu García.

A pesar de que concurrimos con el resultado al cual llega la sentencia que hoy emite este Tribunal, procede que nos expresemos en torno al alcance del procedimiento evidenciario de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) (en adelante Ley Núm. 100).

La sentencia aludida resuelve que, una vez hecha una alegación de despido discriminatorio por razón de edad, basta con probar que hubo un despido injustificado para que se active la presunción que establece el Art. 3 de la Ley Núm. 100 (29 L.P.R.A. sec. 148). En otras palabras, esta posición aparenta no requerir que se presente prueba alguna sobre hechos bases relacionados con el tipo de discrimen por razón de edad bajo el cual se reclama, para activar la presunción del Art. 3, *supra*.

Entendemos que, salvo en aquellos casos en que las alegaciones *bien hechas* no hayan sido controvertidas —es decir, han sido aceptadas o se entiendan aceptadas por virtud de algún mecanismo procesal— una mera alegación no puede dar lugar a que surja una presunción como la que establece el Art. 3 de la Ley Núm. 100, *supra*.[1] Para que surja la presunción de discrimen injustificado por razón de edad bajo cualesquiera de sus modalidades, es indispensable que haya alguna prueba de hechos básicos de los cuales se pueda inferir razonablemente el tipo de discrimen alegado. Esto, unido a la prueba de que hubo un despido injustificado, es lo que da lugar a que se active la presunción del Art. 3, *supra*.

---

[1] Las alegaciones conclusorias no se consideran suficientes para activar la presunción. En relación con alegaciones conclusorias, véanse: *Marín v. Fastening Systems, Inc.*, 142 D.P.R. 499 (1997); *Rivera v. Insular Wire Products Corp.*, 140 D.P.R. 912 (1996); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986).

Por otro lado, tampoco podemos estar de acuerdo con la opinión disidente suscrita por el Juez Asociado Señor Negrón García que requiere, para que se active dicha presunción, que el obrero pruebe un caso prima facie de discrimen por razón de edad. La prueba exigida parece limitarse a la modalidad de discrimen por razón de edad avanzada. Para esto utiliza los cuatro (4) criterios elaborados al amparo de la ley federal antidiscrimen, *Age Discrimination in Employment Act* (A.D.E.A.), 29 U.S.C. sec. 621 *et seq.* Al amparo de la legislación y jurisprudencia federales, el trabajador demandante tiene que probar, no sólo que hubo un despido injustificado, sino también los siguientes hechos: (1) que pertenecía a la clase protegida por la A.D.E.A., es decir, que era mayor de cuarenta (40) años; (2) que estaba calificado (cualificado) para ocupar el puesto del cual fue despedido, y (3) que fue sustituido por una persona más joven.

Cabe señalar que la ley federal es distinta a la nuestra. La A.D.E.A. sólo regula el discrimen contra trabajadores de edad avanzada, definida ésta como personas de más de cuarenta (40) años. Por otro lado, la A.D.E.A. no contiene una disposición que establezca una presunción de discrimen a favor del obrero. Por lo tanto, al amparo de la referida legislación, es lógico que se le exija al empleado demandante establecer un caso prima facie de discrimen por razón de edad, antes de que el patrono demandado venga obligado a defenderse. Esto lo logra presentando evidencia directa o circunstancial que establezca, por preponderancia de la prueba, que hubo un despido injustificado y que están presentes los tres hechos base antes señalados. De este conjunto de hechos probados se puede inferir razonablemente que hubo un despido discriminatorio por razón de edad avanzada, estableciéndose así el caso prima facie que exige la A.D.E.A.

Es obvio que al incorporar a nuestra legislación una disposición que crea una presunción de discrimen a favor del trabajador, el legislador, de forma consistente con nuestra

política pública laboral, quiso facilitarle el establecer su caso minimizando el peso de la prueba que éste debía satisfacer inicialmente.

La médula del asunto que hoy nos ocupa gira en torno a determinar cuál es el *quantum* de prueba que debe producir un obrero para activar a su favor la presunción de discrimen por razón de edad.

Coincidimos en cierta medida con la posición de que para levantar la presunción de discrimen se necesita algo más que establecer que el despido fue injustificado. Sin embargo, como expresáramos anteriormente, no podemos refrendar la posición de que para que dicha presunción se active es necesario probar todos los hechos que se exigen al amparo de la A.D.E.A.

Consideramos que la adecuada y justa solución de este caso requiere que se exija al empleado que, además de persuadir al juzgador de que el despido fue injustificado, demuestre, ya sea con evidencia directa o circunstancial, al menos uno (1) o varios hechos básicos de los cuales se pueda inferir razonablemente el tipo de discrimen por edad alegado. De esta forma, el empleado establecería la presunción de discrimen.

I

*Evolución del discrimen por razón de edad bajo la Ley Núm. 100*

El 30 de junio de 1959 entró en vigor la ley que prohíbe en Puerto Rico el discrimen por razón de edad, la Ley Núm. 100. En el título de dicha legislación se indica que se aprobó para proteger a los obreros y aspirantes a empleo contra discrímenes de los patronos u organizaciones obreras por *razón de edad avanzada*. En la exposición de motivos se expresa que el creciente desarrollo industrial y progreso económico que la Isla había experimentado en esa época hacía necesario anticipar "los problemas que de

acuerdo con la experiencia obtenida en otros pueblos más intensamente desarrollados en el orden industrial tal desarrollo conlleva". Exposición de Motivos de la Ley Núm. 100 de 30 de junio de 1959, Leyes de Puerto Rico, pág. 300. Se identificó como uno de estos problemas "la práctica, que ya com[enzab]a a observarse en Puerto Rico, de discriminar en el empleo de personas por razones de edad exclusivamente". Exposición de Motivos, *supra*. Se hizo mención de que estadísticas recopiladas en Estados Unidos reflejaban que "mientras 40% de las personas que solicita[ba]n empleos ha[bía]n cumplido 45 años de edad, tan solo 22% de las personas aceptadas para empleo [eran] mayores de esa edad." Exposición de Motivos, *supra*, págs. 300–301. La ley que finalmente se aprobó prohibía el discrimen *por razón de edad avanzada* que se definía como "la edad comprendida entre los 30 y 65 años". Art. 5 de la Ley Núm. 100 (1959 Leyes de Puerto Rico 303).

En el 1977 se enmendó la Ley Núm. 100, para "proteger a los aspirantes de empleo o empleados del discrimen por razón de la edad comprendida *entre la edad mínima en que se permite por ley trabajar a los menores*, de acuerdo con la ocupación o industria de que se trate y los 65 años". (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 37 de 7 de junio de 1977, (Parte 2) Leyes de Puerto Rico, pág. 86. En la exposición de motivos se indicó, además, que en Puerto Rico se había "generalizado la práctica de discriminar por razón de edad en áreas permisibles de empleo *sin que tal discrimen se manif[estase] únicamente en la edad avanzada*". (Énfasis suplido.) Íd.

En 1983 se enmendó nuevamente la Ley Núm. 100, para, entre otras cosas, "extender la protección prohibiendo [sic] el discrimen por razón de edad avanzada hasta los setenta (70) años". Ley Núm. 67 de 3 de junio de 1983, Leyes de Puerto Rico, pág. 150. En la exposición de motivos se expresó que la enmienda se hacía para atemperar nuestra ley a la "Ley Federal 'Age Discrimination in Employ-

ment Act' de 1967 [A.D.E.A.], contraparte de la Ley Núm. 100, en la legislación federal [que] establec[ía] el límite de edad de 70 años". (Escolio omitido.) Exposición de Motivos, Ley Núm. 67, *supra*, pág. 151. En 1990 estas secciones de la Ley Núm. 100 volvieron a ser objeto de enmienda con el propósito nuevamente de adaptarlas a cambios sufridos por la A.D.E.A. En esta ocasión se cambió "el tope de 70 años a uno sin límite de edad". Exposición de Motivos de la Ley Núm. 32 de 8 de diciembre de 1990, (Parte 2) Leyes de Puerto Rico, pág. 1524.

Como podrá observarse, aunque nuestra ley sobre discrimen por razón de edad es básicamente la contraparte de la federal, la A.D.E.A., sus disposiciones son mucho más abarcadoras y beneficiosas para el trabajador. La prohibición de discrimen no se limita al que puedan sufrir las personas de edad avanzada, según este término se define por la A.D.E.A., o sea, aquellas que se encuentran en la edad crítica de cuarenta (40) años en adelante. 29 U.S.C. sec. 631. Por lo tanto, al amparo de la Ley Núm. 100, el discrimen por razón de edad avanzada es sólo una de las posibles modalidades de discrimen por razón de edad prohibidas. Al analizar la legislación federal y utilizar sus interpretaciones como persuasivas hay que tener presente que la A.D.E.A. tampoco contiene una presunción de discrimen a favor del obrero similar a la establecida en el Art. 3 de la Ley Núm. 100, *supra*.

## II

*Principios generales procesales y probatorios*

Ahora bien, en casos civiles, por razones de probabilidad, política social y conveniencia, el peso de la prueba se fija en el demandante en la etapa de las alegaciones. E.W. Cleary, *McCormick on Evidence*, 3ra ed., Minnesota, Ed. West Publishing Co., 1984, Cap. 36, Sec. 345, pág. 985. En relación con casos laborales hemos resuelto, al hacer refe-

rencia al procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. secs. 3118–3133), que "[a]unque este procedimiento, limita el uso de las reglas procesales y sitúa al patrono en una posición procesalmente un poco más onerosa que la del obrero, el procedimiento sumario no es, ni puede ser, una carta en blanco para la concesión de remedios a obreros que no han justificado adecuadamente, mediante alegaciones o prueba, hechos que avalen su derecho a lo reclamado". *Rivera v. Insular Wire Products Corp.*, 140 D.P.R. 912, 928 (1996).

Respecto a cómo analizar y sopesar las alegaciones en casos que se ven en rebeldía al amparo de la Ley Núm. 2, *supra*, expresamos que sólo se entenderán aceptados los *hechos bien alegados en la demanda o querella, no siendo suficiente meras alegaciones conclusorias. Rivera v. Insular Wire Products Corp.*, supra.[2] De otra parte, en *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113, 141 (1989), una acción de discrimen por razones políticas al amparo de Ley de Derechos Civiles de Puerto Rico, Ley Núm. 12 de 8 de agosto de 1974 (32 L.P.R.A. sec. 3524), resolvimos "que la mera alegación de un hecho básico, sin que haya sido debidamente establecido, no activa una presunción que permita la inferencia de un hecho presumido".

Aunque la presunción de discrimen se establece por el Art. 3, *supra*, la forma en que ésta opera y sus efectos se rigen por las Reglas 13 y 14 de Evidencia, 32 L.P.R.A. Ap. IV. De acuerdo con la Regla 13, *supra*, "[u]na presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción". Al hecho o grupo de hechos previamente establecidos de los cuales se va a inferir razonablemente el hecho presumido, se les denomina "hechos básicos".

---

[2] Este caso trataba de una acción civil interpuesta por un obrero contra su patrono en la cual se reclamaban derechos al amparo de varias leyes incluyendo la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) bajo la alegación de discrimen por razón de edad.

La Regla 14 de Evidencia, *supra*, por su parte, establece el efecto de las presunciones en casos civiles. Ésta dispone:

En una acción civil, una presunción impone a la parte contra la cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho presumido. Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la no existencia del hecho presumido, el juzgador debe aceptar la existencia de tal hecho. Si se presenta evidencia en apoyo de la determinación de la no existencia de tal hecho, la parte que interesa rebatir la presunción debe persuadir al juzgador de que es más probable la no existencia que la existencia del hecho presumido. Regla 14 de Evidencia, *supra*.

En los comentarios a esta regla se expresa que "[l]a parte afectada por ésta no sólo viene obligada a presentar evidencia para rebatir la presunción sino que además debe persuadir al juzgador por preponderancia de la evidencia de la no existencia del hecho presumido". 32 L.P.R.A. Ap. IV, R. 14 n. Es decir, aunque originalmente el peso de la prueba para establecer el hecho presumido descanse, como en el presente caso, en el obrero demandante, cuando éste se vale de una presunción, una vez establecido el hecho básico, se produce un cambio en el peso de la prueba. Entonces, la parte contraria debe persuadir al juzgador de la no existencia del hecho presumido.

En relación con una presunción, debe haber una conexión racional entre el hecho o los hechos básicos y el hecho presumido, de modo que la inferencia de uno al otro no resulte arbitraria. E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, Cap. III, págs. 44–45; E.L. Chiesa, *Sobre la validez constitucional de las presunciones*, 14 (Núm. 3) Rev. Jur. U.I.A. 727 (1980); *Pueblo v. Sánchez Molina*, 134 D.P.R. 577 (1993); Cleary, *op. cit.*, Sec. 344, págs. 973–987.

En el caso de autos, tanto la opinión de conformidad como la opinión disidente citan los casos: *Belk v. Martínez*, 146 D.P.R. 215 (1998); *López Vicil v. ITT Intermedia, Inc.*, 143 D.P.R. 574 (1997); *Rodríguez Meléndez v. Sup. Amigo,*

*Inc.*, 126 D.P.R. 117 (1990); *Rivera Águila v. K-Mart de P.R.*, 123 D.P.R. 599 (1989);(³) *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985), e *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42 (1983), en apoyo de sus respectivas contenciones. Ciertamente en los casos citados hemos expresado que una vez el empleado demandante establece que su despido fue sin justa causa, se activa la presunción de despido discriminatorio del Art. 3 de la Ley Núm. 100, *supra*. Sin embargo, esto lo hemos hecho dentro del contexto de casos en los que se había presentado prueba o admitido suficientes hechos básicos como para inferir razonablemente que el motivo determinante para el despido injustificado fue el tipo de discrimen alegado en la querella o demanda. En ninguno de los casos citados la presunción de discrimen surgió exclusivamente a base de un despido injustificado probado. En todos, uno o varios de los hechos básicos alegados fueron establecidos *por la prueba* presentada por el empleado demandante. Es decir, que atendimos mas bien al efecto de la presunción, no a la forma en que ésta se activaba.

### III

*Aplicación del Derecho a los hechos*

El 24 de abril de 1991 el Sr. Alberto E. Sandoval Rivera (en adelante Sandoval) presentó ante el entonces Tribunal Superior, Sala de San Juan, una demanda sobre despido injustificado, discrimen por razón de edad, daños y perjuicios y violación de contrato contra el Caribe Hilton International (en adelante Hilton).

Entre otras cosas, alegó que a la fecha en que fue notificado de su despido contaba con cincuenta y un (51) años de edad y hacía aproximadamente treinta y dos (32) años que trabajaba para el Hilton. (Alegaciones tres (3) y cuatro

---

(³) Este caso aparece citado sólo en la opinión disidente.

(4) de la demanda.) En su contestación, el Hilton aceptó que el señor Sandoval trabajó para dicha empresa desde el 1ro de octubre de 1958 hasta el 9 de febrero de 1990. Tampoco cuestionó la edad, aunque sujetó dicha alegación al resultado del descubrimiento de prueba.

Luego de un amplio descubrimiento de prueba y ocho (8) días de vista en su fondo, el foro de instancia dictó sentencia mediante la cual determinó que el señor Sandoval había sido despedido sin justa causa por lo que le concedió los beneficios de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a-185m). Sin embargo, declaró sin lugar la reclamación de despido discriminatorio por razón de edad bajo la Ley Núm. 100.

Inconforme con esta determinación, el señor Sandoval acudió en apelación ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Éste emitió sentencia el 30 de junio de 1997, mediante la cual *confirmó* el dictamen del tribunal de instancia en cuanto al despido injustificado del señor Sandoval y *revocó* la *desestimación* de la causa de acción por despido *discriminatorio* por razón de edad bajo la Ley Núm. 100.

No conforme con la decisión del Tribunal de Circuito, el Hilton presentó un recurso de *certiorari* ante nosotros. Decidimos revisar y expedimos el auto. El 29 de junio de 1998 emitimos una sentencia en la que revocamos la del Tribunal de Circuito y reinstalamos la dictada por el foro de instancia. Estamos revisando el caso en reconsideración.

Luego de haber examinado el extenso expediente del caso y estudiado la voluminosa transcripción de la prueba, no nos cabe duda de que la determinación del foro de instancia, confirmada por el Tribunal de Circuito y luego refrendada por nosotros en la Sentencia de 29 de junio de 1998, de que el señor Sandoval fue despedido *sin justa* causa, es correcta. Sin embargo, creemos desacertada la decisión del Tribunal de Primera Instancia de desestimar la causa de acción por despido discriminatorio.

Una lectura de la demanda refleja con meridiana claridad que el señor Sandoval reclamó los beneficios que concede la Ley Núm. 100, bajo la modalidad de despido discriminatorio por razón de edad avanzada. Tampoco existe duda de que hubo prueba de que el señor Sandoval tenía cincuenta y un (51) años y, por ende, estaba dentro del grupo protegido contra discrimen por razón de edad avanzada, según éste ha sido tradicionalmente reconocido, o sea, personas de cuarenta (40) años de edad en adelante. La definición de lo que son personas de edad avanzada para propósitos de esta modalidad del discrimen por razón de edad, se desprende tanto de las expresiones de la Legislatura, en ocasión de la aprobación de la Ley Núm. 100, y de las diferentes enmiendas que se le han hecho, como de nuestra jurisprudencia interpretativa.[4]

Tampoco nos cabe duda de que quedó debidamente establecido que el señor Sandoval estaba capacitado para ejercer sus funciones. Este dato lo podemos inferir del hecho de que estuvo empleado por el Hilton por un periodo de treinta y dos (32) años y que la causa de su despido no fue su falta de capacidad. Entendemos que para activar la presunción del Art. 3 de la Ley Núm. 100, *supra,* no era absolutamente necesario probar que fue reemplazado con una persona menor, o sea, que no está dentro del grupo que se considera de edad avanzada para propósitos de la determinación de dicha modalidad de discrimen.

Habiendo quedado probado que el señor Sandoval no solamente fue despedido sin justa causa, sino que pertenecía al grupo de personas protegidas contra discrimen por razón de edad avanzada, y que estaba capacitado para ejercer las funciones de su cargo, consideramos que entre estos hechos básicos y el hecho presumido de discrimen por

---

[4] Según ya señaláramos, la versión original de la Ley Núm. 100, *supra,* sólo prohibía el discrimen por razón de edad avanzada y la definía como la "edad comprendida".

razón de edad avanzada hay una conexión racional. Por lo tanto, la inferencia de uno al otro no resulta arbitraria.

Por las razones antes expuestas, concluimos que la presunción de discrimen por razón de edad avanzada quedó debidamente activada y que el Hilton no la derrotó, o sea, no probó la inexistencia del hecho presumido. Ante estas circunstancias, el juzgador venía obligado a aceptar la existencia de este hecho. Actuó correctamente el Tribunal de Circuito al revocar la determinación del foro de instancia de desestimar la causa de acción bajo la Ley Núm. 100, de discrimen por razón de edad avanzada.

— O —

Opinión de conformidad del Juez Asociado Señor Fuster Berlingeri, a la que se une el Juez Asociado Señor Hernández Denton.

(En reconsideración)

Nos toca precisar qué prueba debe presentar un patrono para rebatir la presunción de discrimen que obra en su contra en virtud de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) en casos de despido injustificado. En particular, debemos examinar el uso para tal fin del contrainterrogatorio de testigos adversos al patrono.

I

El peticionario en reconsideración, Alberto Sandoval Rivera, fue despedido de su empleo en el Hotel Caribe Hilton en 1990, después de aproximadamente 32 años de servicio en dicha empresa. A través de esos años de servicio, Sandoval desempeñó sus funciones de manera satisfactoria para el hotel. Recibió aumentos de sueldo y fue repetida-

mente ascendido. Durante esos años ocupó varias posiciones, la última de las cuales fue la de Gerente de Banquetes.

Sandoval fue despedido supuestamente por haber distribuido de manera indebida unas propinas generadas en banquetes celebrados en el hotel, recibiendo alegadamente una cantidad de esas propinas mayor que la que le correspondía.

Sandoval impugnó el despido referido. Presentó una querella contra el hotel por discrimen por razón de edad, ante la Unidad Antidiscrimen del Departamento del Trabajo del Estado Libre Asociado de Puerto Rico. Eventualmente, la Directora de la Unidad Antidiscrimen referida autorizó a Sandoval a presentar su reclamación ante los tribunales del País, lo cual hizo.

Para impugnar su despido, Sandoval adujo que a finales de 1988, luego de un cambio en la gerencia, el Hotel Caribe Hilton comenzó a desplegar una política de eliminar a los empleados de muchos años de servicio. Indicó que su patrono implantó un plan de retiro temprano del hotel e instruyó a los supervisores a que ejercieran presión sobre tales empleados para lograr que se retiraran. Alegó, además, que en virtud de la política aludida, sus funciones fueron reducidas; se le trasladó a una oficina más pequeña e incómoda, y se le sustituyó en la dirección real de su departamento por una empleada mucho más joven que él. Finalmente, Sandoval alegó que fue despedido discriminatoriamente, por razón de su edad, y que la cuestión de las propinas fue sólo una excusa para encubrir la verdadera razón del despido discriminatorio.

Luego de los procedimientos de rigor, el foro de instancia resolvió que Sandoval *había sido despedido sin justa causa*. Determinó que la investigación por el hotel de la cuestión de las propinas había sido *defectuosa*, y que el informe del hotel sobre el particular —en el cual se impu-

taba una distribución desproporcionada en las propinas— era *erróneo*, por lo que no podía servir de fundamento para el despido de Sandoval.

En cuanto a la cuestión del discrimen, sin embargo, el foro de instancia resolvió que *"no estaba convencido"* de que el patrono discriminara contra Sandoval por razón de edad. Fundamentó su decisión esencialmente sobre sólo tres elementos de la amplia prueba que tuvo ante sí. Primero, que el testimonio de una testigo de Sandoval, quien alegó haber escuchado a representantes gerenciales mientras discutían la implantación de la política patronal de despedir los empleados de mucha antigüedad, "t[enía] que ser tomado con suma sospecha", porque el esposo de dicha testigo también tenía una demanda de discrimen por razón de edad en contra del Hotel Caribe Hilton. Segundo, que otro testimonio de un ex empleado del hotel, quien dijo haber escuchado a un alto funcionario de dicha empresa decir que había que despedir los empleados viejos del hotel, no le merecía credibilidad. Señaló el foro de instancia que dicho testimonio no sólo le parecía insólito sino, además, que era contrario a lo declarado por el funcionario aludido, quien negó haber hecho tal manifestación. Tercero, que el plan de retiro temprano que el hotel le ofreció a sus empleados de más antigüedad en el trabajo "no contribu[ía] en lo absoluto a demostrar" que el despido fue discriminatorio. Sobre estas únicas bases, el foro de instancia resolvió *que Sandoval no había demostrado* que el verdadero motivo de su despido era discriminatorio. Sin embargo, el tribunal de instancia no expresó nada sobre el resto de la extensa prueba sobre el alegado discrimen introducida por Sandoval, quien presentó numerosos testigos sobre los hechos que alegó, además de presentar su propio testimonio. En particular, dicho foro no expresó juicio alguno sobre el testimonio del propio Sandoval. Aunque hizo una breve mención de una parte del testimonio de éste en

su sentencia, no expresó de modo alguno si lo declarado por Sandoval le merecía poca o ninguna credibilidad.

Inconforme con este dictamen, Sandoval recurrió ante el Tribunal de Circuito de Apelaciones. En lo pertinente, este foro revocó el dictamen de instancia. Resolvió que como el despido de Sandoval había sido injustificado, *había surgido una presunción de que dicho despido había sido discriminatorio*, y *que el patrono no había derrotado tal presunción*. Determinó que la prueba considerada por el foro de instancia era insuficiente para poder concluir que se había refutado la presunción referida.

Inconforme con el dictamen del foro apelativo, el hotel patrono acudió ante nos. Inicialmente, mediante sentencia, revocamos el dictamen del Tribunal de Circuito de Apelaciones.[1] En esencia, confirmamos la sentencia de instancia.

En reconsideración, sin embargo, luego de estudiar más a fondo las cuestiones ante nos, resolvimos dejar sin efecto nuestra sentencia anterior, y emitir en su lugar el dictamen de autos.

## II

Es menester comenzar señalando que la sentencia de instancia adolece de un defecto que es pertinente a uno de los planteamientos del peticionario. Como se ha indicado ya, el foro de instancia fundamentó su determinación sobre la cuestión de discrimen en sólo una parte de la prueba presentada por el empleado despedido. Nada dijo sobre el resto de la prueba. En particular, nada expresó el tribunal sentenciador sobre el testimonio del propio Sandoval de que su patrono le había solicitado que ejerciera presión para lograr el retiro temprano de los empleados de mucha

---

[1] El Juez Asociado Señor Fuster Berlingeri disintió.

antigüedad que Sandoval supervisaba. Aunque dicho tribunal en su sentencia evaluó detalladamente la credibilidad que le merecían dos testigos, nada así hizo sobre el testimonio del propio despedido, ni sobre la otra prueba desfilada. No sabemos con certeza, pues, si el juzgador de instancia no creyó estos elementos de la prueba o si los consideró poco pertinentes, o si fue que los estimó insuficientes.

La omisión aludida del foro de instancia nos hace difícil la labor de considerar a cabalidad el planteamiento del peticionario de que la determinación de ese foro es contraria a la prueba que él desfiló, sobre todo en vista de que en estos casos de alegado despido discriminatorio, cuestiones como la de la credibilidad de los testigos son de particular importancia, según hemos indicado antes. En *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294, 306 (1994), expresamente indicamos que en casos de alegado despido discriminatorio "el factor credibilidad juega un papel importantísimo en el resultado de la reclamación". La adjudicación de credibilidad, como se sabe, es una función propia del juzgador de los hechos, que prevalece siempre salvo que haya mediado prejuicio o error manifiesto de su parte. *López Vicil v. ITT Intermedia*, infra; *Pueblo v. Bonilla Romero*, 120 D.P.R. 92 (1987).

Por lo anterior, si el juzgador de los hechos no adjudica la credibilidad de testigos importantes en un caso como el de autos, se dificulta mucho la labor de aquilatar el peso de la prueba pertinente.

Lo anterior no obstante, existe otro problema más grave en relación al dictamen del foro de instancia, también planteado por el peticionario, que *sí* nos permite adjudicar con certeza el recurso ante nos. Veamos.

# III

El Art. 3 de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 148) dispone que en casos de despidos como el de autos, que han sido realizados sin justa causa, *se presumirá* que dicho despido fue cometido por razón de discrimen. Así lo hemos interpretado reiteradamente. *Belk v. Martínez*, 146 D.P.R. 215 (1998); *López Vicil v. ITT Intermedia, Inc.*, 142 D.P.R. 857 (1997); *Soto v. Hotel Caribe Hilton*, supra; *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117 (1990); *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985); *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42 (1983). Incluso hemos resuelto de manera clara y explícita que la particular presunción de discrimen por edad que establece nuestra Ley Núm. 100, *supra*, es *distinta* de la presunción parecida de discrimen por edad que establece la legislación federal, el *Age Discrimination in Employment Act* (ADEA). Para que la presunción referida surja conforme al ADEA, el empleado despedido tiene que establecer cuatro elementos previamente, a saber: (1) que pertenecía a la clase protegida; (2) que estaba cualificado para ocupar la posición; (3) que fue despedido, y (4) que fue sustituido por una persona más joven. En cambio, conforme a nuestra Ley Núm. 100, *supra*, la presunción de discrimen surge una vez se establece que el despido se realizó sin justa causa. *Se trata de dos maneras distintas de activar la presunción referida*, y la que fija la Ley Núm. 100, *supra*, es indudablemente más favorable al trabajador despedido que su contraparte federal. Así lo hemos resuelto reiteradamente y constituye la doctrina vigente en nuestra jurisdicción. *López Vicil v. I.T.T. Intermedia, Inc.*, supra; *Soto v. Hotel Caribe Hilton*, supra; *Ibáñez v. Molinos de P.R., Inc.*, supra. Conforme a la jurisprudencia referida, una vez el empleado demandante establece que su despido fue sin justa causa, entra en vigor a su favor la presunción

de despido discriminatorio y le corresponde al patrono refutar la presunción de discrimen que obra en su contra. Lo explicamos así en *Ibáñez v. Molinos de P.R., Inc.*, supra, pág. 53:

> ... la presunción establecida por nuestra Ley Núm. 100, contra discrimen, significa que el *patrono demandado viene obligado a probar* que el despido *no* fue discriminatorio. Nuevamente es preciso señalar la diferencia con la doctrina federal. En nuestra jurisdicción no es necesario que el patrono afirmativamente "articule" una explicación razonable para el despido, aunque en la práctica ésta sería la forma más certera y conveniente de destruir la presunción. Basta con que pruebe, aun mediante evidencia circunstancial, que la razón para el despido *no* fue discriminatoria para que la presunción quede destruida. *Esto último, sin embargo, ha de hacerse mediante preponderancia de la prueba,* lo que representa un *quantum* mayor de prueba que el exigido en la jurisdicción federal. (Énfasis suplido y en el original.)

En el caso de autos, *el foro de instancia no resolvió en ningún momento que el patrono demandado había logrado rebatir la presunción que existía en su contra de que el despido de Sandoval había sido discriminatorio.* Dicho foro no explicó de modo alguno cómo dicho patrono había probado, mediante preponderancia de la prueba, que el despido no fue discriminatorio. Lo único que resolvió el tribunal sentenciador fue que *de la prueba desfilada por el empleado demandante, no estaba convencido que el hotel hubiese discriminado en contra de Sandoval.* Como hemos indicado antes, el foro de instancia en su sentencia se limitó a señalar que en cuanto al testimonio de dos testigos presentados por Sandoval, uno era sospechoso y el otro no le merecía credibilidad; y que la existencia de un plan de retiro temprano no era prueba de discrimen. En lo pertinente, nada más discutió el tribunal en su sentencia; ni siquiera aludió a la presunción que obraba a favor de Sandoval, en su examen de lo relativo a la prueba de autos.

En vista de lo anterior, es evidente, como bien resolvió el foro apelativo, que el tribunal de instancia *actuó bajo la*

*premisa errónea de que le correspondía a Sandoval probar su caso de discrimen.* Lo que el foro de instancia *no hizo* fue precisamente lo que debió haber hecho: determinar que existía una presunción de discrimen a favor de Sandoval; y entonces, si tal fuese el caso, explicar cómo y por qué esa presunción había sido en efecto derrotada por el patrono mediante la preponderancia de la prueba.

El erróneo curso de decisión del foro sentenciador requiere que nosotros hagamos lo que éste debió haber hecho. Pasemos, pues, al análisis probatorio sobre si hubo refutación por el patrono de la presunción de discrimen que obraba a favor de Sandoval en el caso de autos.

## IV

Es una norma bien establecida en nuestro ordenamiento jurídico evidenciario que la parte contra quien va dirigida una presunción no sólo tiene la obligación de presentar evidencia para impugnarla, so pena de que el juzgador quede obligado a inferir el hecho presumido, sino que tiene el peso de la prueba para persuadir al juzgador de que no ocurrió el hecho presumido. *Hawayek v. A.F.F.*, 123 D.P.R. 526 (1989). El profesor Chiesa explica lo anterior de la siguiente manera:

> Así, pues, la parte contra quien va dirigida la presunción no sólo tiene la obligación de presentar evidencia —so pena de que el juzgador quede obligado a inferir el hecho presumido— sino que, además, tiene el peso de la prueba para persuadir al juzgador de que no ocurrió el hecho presumido.
>
> ... Si [dicha parte] presenta prueba en apoyo de que no ocurrió el hecho presumido, entonces el juzgador resolverá la cuestión a la luz de toda la evidencia, pero teniendo presente que el peso de la prueba lo tiene la parte que pretende establecer que el hecho presumido no ocurrió. E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, pág. 44.

La norma aludida está establecida de modo expreso en

la vigente Regla 14 de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV. Dicha regla dispone lo siguiente:

*Regla 14. Efecto de las presunciones en casos civiles*
En una acción civil, una presunción impone a la parte contra la cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho presumido. *Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la no existencia del hecho presumido, el juzgador debe aceptar la existencia de tal hecho.* Si se presenta evidencia en apoyo de la determinación de la no existencia de tal hecho, *la parte que interesa rebatir la presunción debe persuadir al juzgador de que es más probable la no existencia que la existencia del hecho presumido.* (Énfasis suplido.) 32 L.P.R.A. Ap. IV, R. 14.

El profesor Emmannuelli, en su obra *Prontuario de Derecho Probatorio Puertorriqueño*, nos señala lo siguiente, en lo pertinente:

La Regla 14 dispone que en los casos civiles, las presunciones son *mandatorias y fuertes.* Bajo esta disposición las presunciones son fuertes porque imponen a la parte contra la cual se establece la presunción el peso de la prueba para demostrarle al juzgador la inexistencia del hecho presumido. El peso de la prueba consiste en persuadir al juzgador de que es más probable la no existencia que la existencia del hecho presumido. *Es decir, debe rebatir la presunción mediante la preponderancia de las pruebas.* Son mandatorias, porque *si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la no existencia de hecho presumido* o no puede convencer al juzgador a base de la preponderancia de la prueba sobre la no existencia del mismo, *el juzgador tiene que aceptar la existencia de tal hecho en forma concluyente.*
La Regla 14 tiene el efecto de cambiar el peso de la prueba una vez la parte que interesa la aplicación de la presunción ha establecido los hechos básicos. La parte perjudicada por la presunción entonces debe presentar prueba y convencer al juzgador de la no existencia del hecho presumido. *En los casos civiles una presunción es suficiente para que la parte que se apoya en la misma prevalezca en una acción.* (Énfasis suplido y escolio omitido.) R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, República Dominicana, Ed. Corripio, 1994, pág. 31.

Debe señalarse que en la jurisdicción federal, de donde

proceden en parte nuestras reglas de evidencia, una presunción como la de autos no puede derrotarse fácilmente. Así, pues, Wright y Graham, en su cardinal obra *Federal Practice and Procedure*, citando a J.M. Maguire, *Evidence: Common Sense and Common Law*, Chicago, Foundation Press, 1947, señalan que presunciones como las que aquí nos conciernen, que están investidas "de tan alto interés público", *Soto v. Hotel Caribe Hilton*, supra, sólo pueden derrotarse por prueba que sea *amplia y vigorosa* (*wide and forceful*). 21 *Wright and Graham, Federal Practice and Procedure* Sec. 5126, pág. 608 esc. 19 (1977). Destacan estos eminentes eruditos del derecho de prueba:

> ... the evidence that is supposed to contradict the presumed fact must not only be sufficient in weight, but must also be broad enough to cover the whole of the presumed fact. *Wright and Graham*, supra.

Nosotros mismos, al reiterar que en casos de despido injustificado corresponde al patrono rebatir la presunción de discrimen que obra en su contra, hemos señalado que el patrono debe *demostrar* "con preponderancia de la prueba, que el despido no fue discriminatorio" y que para ello el patrono *debe presentar* "evidencia de calidad suficiente para convencer al juzgador ...". (Énfasis suprimido.) *Belk v. Martínez*, supra, pág. 231.

A la luz de las normas referidas, ¿presentó el patrono en este caso prueba preponderante, de calidad suficiente para rebatir la presunción de discrimen que obraba en su contra?

De un examen cuidadoso de los autos de este caso, surge claramente que el patrono demandado *no presentó prueba propia alguna* dirigida concretamente a derrotar la presunción de discrimen aludida. El grueso de la prueba del patrono estuvo dirigida a tratar de establecer que el despido de Sandoval no fue *injustificado*. Giraba en torno al asunto del alegado manejo impropio de las propinas. Fuera de esta evidencia, la prueba del patrono referente al pre-

sunto despido discriminatorio se limitó al contrainterrogatorio de Sandoval y de sus testigos. Aparentemente, el patrono estimó que de activarse la presunción de discrimen a favor de Sandoval, ésta podía derrotarse mediante el contrainterrogatorio de Sandoval y de los mismos testigos presentados por éste, por lo que no era necesario presentar prueba propia adicional para ello. En efecto, en su recurso ante nos el patrono hace hincapié en que para adjudicar la cuestión del discrimen es necesario aquilatar la impugnación de la prueba de Sandoval, que el patrono realizó mediante el contrainterrogatorio.([2])

En principio, nada le impedía al patrono demandado confiar sólo en el contrainterrogatorio aludido para rebatir la presunción de discrimen que podía activarse y que en efecto se activó en su contra. El testimonio que surgiese de dicho contrainterrogatorio ciertamente podía constituir prueba adecuada para los fines del demandado, debido a que, como se sabe, en nuestra jurisdicción, el testimonio de cualquier testigo sobre un hecho material, que merezca entero crédito, es prueba suficiente de ese hecho, salvo que por ley otra cosa se disponga. Regla 10(D) de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV. Nuestro ordenamiento jurídico no dispone una forma evidenciaria específica mediante la cual el patrono en casos como el de autos debe probar que no discriminó. La presunción puede ser destruida incluso mediante evidencia circunstancial. *Ibáñez v. Molinos de P.R., Inc.*, supra, pág. 53. Nada le impedía al demandado, pues, utilizar prueba del propio demandante para realizar su cometido. *Lo importante era que la prueba que surgiese del contrainterrogatorio aludido fuese prepon-*

---

([2]) El patrono en su recurso ante nos aduce que como el foro de instancia *no bifurcó* los procedimientos, para adjudicar primero la cuestión del despido injustificado bajo la Ley Núm. 80 (29 L.P.R.A. secs. 185a-185m) y luego, si procedía, considerar la cuestión de la presunción de discrimen bajo la Ley Núm. 100 (29 L.P.R.A. secs. 146–151) el foro inferior tenía que aquilatar la totalidad de la prueba presentada, a fin de decidir sobre la cuestión del discrimen. En ese contexto, afirma que para rebatir la presunción, era menester considerar la prueba establecida por el patrono "en el curso del contrainterrogatorio del señor Sandoval y sus testigos".

*derantemente suficiente para demostrar que no hubo
discrimen.*

En el caso de autos, sin embargo, es claro que *la presun-
ción de discrimen que nos concierne no quedó concreta-
mente derrotada mediante el contrainterrogatorio referido.*
Los testimonios adversos al patrono sobre el discrimen ale-
gado, que el patrono intentó impugnar mediante el contra-
interrogatorio, en sí sólo constituían *prueba acumulativa*
en apoyo de la presunción de discrimen que se activó a
favor de Sandoval. Si en virtud del contrainterrogatorio
aludido, Sandoval o alguno de sus testigos hubiese admi-
tido, declarado o intimado que el patrono no tenía la inten-
ción de discriminar, entonces es posible que dicho testimo-
nio hubiese podido servir para refutar la fuerte presunción
de discrimen presente en este caso. *Pero evidentemente
nada de ello ocurrió aquí. No hay evidencia alguna ante
nos de que del contrainterrogatorio aludido se extrajo testi-
monio a favor del patrono.* En su recurso ante nos, el pa-
trono insiste una y otra vez en que debe tomarse en cuenta
su impugnación mediante el contrainterrogatorio de la
prueba sometida por Sandoval, a los fines de evaluar el
asunto del discrimen; pero *nada concreto señala que sur-
giese del contrainterrogatorio referido que sirviese como
prueba para derrotar la presunción de discrimen.* No in-
dica, por ejemplo, qué admisión, si alguna, surgió del con-
trainterrogatorio de testigos adversos que demostrase la
intención del patrono sobre el despido de Sandoval. Nada
en este sentido surge tampoco de las sentencias de los foros
de instancia y apelativo, ni de los numerosos escritos y
documentos que obran en autos. Lo que sí es evidente es
que los testimonios presentados por Sandoval no incluían
nada que fuese pertinente o que abonara algo a favor de la
tesis de que el patrono no tuvo intención de discriminar
contra Sandoval. Por el contrario, dichos testimonios sólo
aludían a alegadas manifestaciones de la política discrimi-
natoria del patrono, *y el mero hecho de que el juzgador de*

*instancia no le hubiera otorgado credibilidad, no puede ló-gicamente interpretarse como que dichos testimonios se convirtieron por ello en prueba preponderante de la alega-ción contraria del patrono.*

Debe destacarse que este Tribunal, en una ocasión anterior, interpretando el alcance precisamente de la Regla 14 de Evidencia, *supra,* relativa al efecto de las presunciones en casos civiles, hizo valer el hecho presumido en el caso en cuestión porque la parte contra quien obraba la presunción *no presentó prueba propia para derrotar la presunción,* a pesar de que dicha parte *sí contrainterrogó* a los testigos de la parte favorecida por la presunción. *Pueblo v. Vázquez Méndez,* 117 D.P.R. 170 (1986). En ese caso, como en el de autos, el contrainterrogatorio aludido no aportó prueba de calidad suficiente para derrotar de modo preponderante la presunción presente allí.

En resumen, pues, unos testimonios *cuyos contenidos en sí nada aportaron a la tesis de que el patrono no discriminó contra Sandoval,* no son suficientes, *sólo por su mera falta de credibilidad,* para derrotar una presunción jurídica de discrimen en el despido y para probar afirmativa y preponderantemente que no hubo discrimen. No hay nexo lógico alguno entre su mera falta de credibilidad y el hecho medular que el patrono venía obligado a demostrar con preponderancia de prueba. La impugnación de lo declarado por estos testigos, aun si fue exitosa, de por sí sólo demuestra que los testimonios referidos no tenían valor como prueba acumulativa del presunto discrimen. No demuestra de modo alguno que *no ocurrió el hecho presumido.*

Por todo lo anterior, se debe confirmar la sentencia del foro apelativo.

— o —

Opinión disidente del Juez Asociado Señor Negrón García.

(En reconsideración)

Deferencialmente, la sentencia mayoritaria entremezcla hoy impermisiblemente el verdadero alcance del procedimiento evidenciario de la ley sobre *despidos discriminatorios* —Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151)— e identifica erróneamente la controversia y razón de decidir del foro de primera instancia. No es sobre qué prueba debe presentar un patrono para rebatir la presunción estatutaria de discrimen, sino *qué prueba suficiente debe producir un obrero para activar a su favor esa presunción.*

La confusión en el análisis de las normas de derecho probatorio, lleva a la Mayoría a sostener *que siempre el peso inicial de la prueba corresponde al querellado.* Como consecuencia, parte de la premisa equivocada de que existió una presunción de discrimen, y por ende, resuelve que el patrono Hotel Caribe Hilton no la rebatió efectivamente. Se descarta así la aquilatación que de la prueba hizo en el *caso de autos* el juzgador primario de los hechos. Elaboremos.

I

En varias ocasiones hemos examinado las disposiciones de la legislación antidiscrimen en el empleo, en particular su presunción. *Belk v. Martínez,* 146 D.P.R. 215 (1998); *López Vicil v. ITT Intermedia, Inc.,* 142 D.P.R. 857 (1997); *Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 D.P.R. 117 (1990); *Rivera Águila v. K-Mart de P.R.,* 123 D.P.R. 599 (1989); *Odriozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. 485 (1985); *Ibáñez v. Molinos de P.R., Inc.,* 114 D.P.R. 42 (1983). El Art. 3 de la Ley Núm. 100, *supra,* 29 L.P.R.A. sec. 148, dispone que "[s]e presumirá [contro-vertiblemente] que

cualquiera de los actos mencionados en las secciones precedentes [discrimen por razón de edad, raza, color, sexo, origen social o nacional, o condición social, ideas políticas o religiosas] fueron cometidos en violación de las secs. 146 a 151 de este título, cuando *los mismos hayan sido realizados sin justa causa*". (Énfasis suplido.) 29 L.P.R.A. sec. 148.([1])

Aunque las presunciones no constituyen evidencia propiamente, están incluidas en el cuerpo normativo probatorio por ser "reglas de inferencia relativas a las inferencias que el juzgador puede o debe hacer de la *evidencia admitida*". E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, Cap. III, pág. 39. Al respecto, la Regla 13(A) de Evidencia, 32 L.P.R.A. Ap. IV, define *presunción* como "una deducción de un hecho que la ley autoriza a hacer o requiere que se haga *de otro hecho o grupo de hechos previamente establecidos en la acción.* A ese hecho o grupo de hechos previamente establecidos, se le denomina *hecho básico; al hecho deducido mediante la presunción se le denomina hecho presumido*". (Énfasis suplido.)

Al analizar la presunción de discrimen por razón de edad a la luz de esta regla y nuestra jurisprudencia interpretativa, colegimos que *por imperativo del debido proceso de ley, para que pueda activarse, el reclamante tiene que establecer previamente ciertos hechos básicos.* Aunque escuetamente articulada, la presunción incluye todas las modalidades de discrimen prohibidas. *Ello hace necesario probar, directa o circunstancialmente, hechos básicos mínimos adicionales al despido injustificado, susceptibles de potencialmente configurar la modalidad discriminatoria alegada.* De lo contrario, probando únicamente que el despido fue injustificado, teóricamente se activaría la modali-

---

([1]) El propósito fundamental de esta presunción es facilitar al obrero probar su caso de discrimen, pues por su posición desventajosa frente al patrono, usualmente depende de evidencia circunstancial para hacerlo. *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42, 50 (1983).

dad, obligando al querellado a *probar y persuadir* que el despido no fue discriminatorio, aun cuando no exista esa prueba previa básica. Semejante situación adolecería del defecto constitucional de ausencia racional entre el hecho básico (despido injustificado) y el presumido (discrimen en la modalidad concernida).

A tono con estos imperativos, para activar la presunción en su modalidad de discrimen por edad, la jurisprudencia hasta ahora[2] ha resuelto que el actor tiene que establecer que: (1) está dentro del grupo protegido por el estatuto, es decir, entre las edades especificadas; (2) fue despedido sin justa causa; (3) estaba cualificado para el puesto, y (4) *fue reemplazado por empleado más joven. López Vicil v. ITT Intermedia, Inc.*, supra. *El peso de la prueba en cuanto a estos hechos básicos, corresponde a quien advendría favorecido por la presunción, y su estándar, aquella certeza o convicción moral del juzgador en un ánimo no prevenido.* Regla 10(C) de Evidencia, 32 L.P.R.A. Ap. IV; R. Emmanueli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 1ra ed., República Dominicana, Ed. Corripio, 1994, pág. 127.

*Como el juzgador no es una simple computadora receptiva de datos —tiene que aquilatar y cernir esos hechos básicos— a menos que tenga la certeza o convicción moral de que el reclamante los estableció, no puede asumir la existencia del hecho presumido.* Si por el contrario, en conciencia cree que lo logró, tiene que asumir su existencia. Una vez activada la presunción, la carga de producir y persuadir se transfiere al querellado, teniendo que probar que la existencia del hecho presumido (discrimen) es menos probable que su inexistencia. Por ser una presunción de efecto fuerte, ante la duda, el juzgador tiene que dar por probado el hecho presumido. Regla 14 de Evidencia, 32 L.P.R.A. Ap.

---

[2] La enmienda al Art. 6(1) de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 151(1)) que extiende la protección que prohíbe el discrimen por razón de edad *sin límite de edad alguno,* se produjo el 8 de diciembre de 1990.

IV; *Belk v. Martínez*, supra; *López Vicil v. ITT Intermedia, Inc.*, supra; *Ibáñez v. Molinos de P.R., Inc.*, supra. Si bien esta vigorosidad de la presunción no plantea en nuestra jurisdicción mayores problemas constitucionales —por aplicar a casos civiles ante tribunal de derecho— "siempre queda la probabilidad de que una presunción, aún en casos civiles, viole el debido procedimiento de ley *por ausencia de conexión racional entre hecho básico y hecho presumido*". (Énfasis suplido.) Chiesa, *op. cit.*, págs. 44-45. *Demás está decir que la violación sería fatalmente insuperable, si en lugar de no existir tal conexión, no se establecen los hechos básicos que, como el vital oxígeno, dan vida a la presunción.*

Así, pues, desde la perspectiva del querellado, existen dos modos de evitar que surja o controvertir la presunción. *Primero, durante la etapa de presentación de la prueba del querellante, atacar y controvertir la existencia de los hechos básicos y así evitar que se active la presunción. Segundo, producir evidencia que persuada al juzgador que la existencia del hecho presumido —discrimen— es menos probable que su inexistencia. En ambos supuestos, tiene a su disposición todos los medios que provee el derecho probatorio, entre ellos, impugnar la credibilidad de los testigos o traer prueba separada (directa o circunstancial) de refutación.*

## II

*En el caso ante nos, un profundo y meticuloso estudio de la extensa transcripción de evidencia nos convence de la corrección del tribunal de instancia al concluir que el reclamante Alberto E. Sandoval Rivera no demostró la existencia de los hechos básicos*; no activó la presunción de discrimen por edad. *Veamos.*

*La mayor parte de su prueba estuvo dirigida a contrarrestar la defensa interpuesta por el Caribe Hilton, ante la razón que tuvo para despedirlo —mala distribución y apro-*

*piación de propinas— y así establecer que lo despidió injustificadamente. En cuanto al discrimen, se limitó a traer* prueba directa *de algunos incidentes que sugerían discrimen por edad.* Sobre ella pasó juicio el juzgador, la dirimió y *no le mereció credibilidad.*(³) Tampoco estableció mediante certeza y convicción moral, su caso prima facie para activar la presunción: nunca presentó evidencia de que fue sustituido por empleado más joven. *En su caso particular, establecer este hecho básico era de crucial importancia toda vez que la investigación realizada por el Hotel sobre la irregularidad en la distribución de propinas, incluyó a tres (3) empleados —entre ellos, Sandoval Rivera— y uno de ellos, mayor de sesenta (60) años, no fue despedido ya que no participó en la distribución incorrecta de las propinas.*(⁴) Sandoval Rivera se limitó a decir que *antes*

---

(³) La primera mención de discrimen durante la presentación de la prueba de Sandoval Rivera, fue en el testimonio de su hija Nora Vanessa Sandoval. Declaró que su padre dijo que el Caribe Hilton estaba haciendo cambios y buscando "sangre nueva". *Sin embargo, en el contrainterrogatorio, aceptó que ello "no qu[ería] decir que en el hotel se dijera eso ...".* T.E., 13 de junio de 1994, pág. 53. El próximo incidente traído por Sandoval Rivera fue una supuesta reunión entre altos ejecutivos del Hotel, en la que celebraron una rifa y alegadamente expresaron terminar con el "clan de viejos". T.E., 14 de junio de 1994, pág. 21. Se demostró que el esposo de la testigo que alegó presenciar dicha reunión, demandó al Hotel Caribe Hilton por ser despedido, en fecha posterior a la cesantía de Sandoval Rivera.

Durante su testimonio, Sandoval Rivera señaló que el Caribe Hilton le solicitó producir un expediente negativo a los empleados de mayor edad (T.E., 15 de junio de 1994, pág. 80) y que el contralor Mehdi Naqvi, le sugirió acogerse al plan de retiro propuesto por la hospedería. *Sobre este extremo, la prueba refleja que la idea del plan de retiro para los empleados la originó la propia Unión de empleados.* T.E., 16 de junio de 1994, pág. 94. Contrainterrogado, admitió que nunca presentó querella formal de discrimen contra el Hotel. T.E., 16 de junio de 1994, pág. 94. Otra ocasión en que se hace referencia al discrimen fue durante el testimonio del perito de Sandoval Rivera, el Psiquiatra Sanz Ortega. Señaló que Sandoval Rivera le manifestó que fue despedido por una cuestión de discrimen, más nunca le mencionó el problema de la distribución de propinas. T.E., 17 de junio de 1994, pág. 115.

A través de toda la presentación de la prueba —aproximadamente mil trescientas (1,300) páginas— *éstas son las únicas instancias en que se trajo a colación el asunto del discrimen.*

(⁴) Rechazamos la tesis de que meras alegaciones sirven para activar la presunción. Es requisito sine qua non probar los hechos básicos para activarla. Significa establecer, además del despido injustificado, *al menos uno* de los hechos básicos provistos por la legislación homóloga federal —A.D.E.A.—, enumerados previamente. Una posición distinta ignora que la protección constitucional de debido proceso, no sólo exige la existencia de los hechos básicos, *sino una conexión racional* entre ellos y el hecho presumido (discrimen por edad). Si bien, dos (2) de los hechos

*de ser cesanteado*, "trajeron a alguien más, a otro joven".
T.E., 15 de junio de 1994, pág. 23.

*Aún así, la sentencia mayoritaria parte del supuesto de
que Sandoval Rivera estableció los hechos básicos requeri-
dos para activar la presunción de discrimen a su favor.
Sostiene que como el Hotel Caribe Hilton no presentó
prueba suficiente para rebatirla, el tribunal tenía que inde-
fectiblemente concluir que hubo discrimen. Desatiende, re-
petimos una realidad no contradicha*: que el ilustrado juz-
gador de hechos, quien observó y aquilató la prueba, no
encontró probados los hechos básicos, por lo que la presun-
ción nunca se activó, el peso de la prueba nunca se trans-
firió al querellado. *Si en alguna forma incidió el tribunal
de instancia fue negarse a desestimar la reclamación de
discrimen*, basado en su interés de escuchar la prueba del
demandado. *Nos explicamos.*

## III

*La Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap.
III, dispone que cuando "el demandante haya terminado la*

---

bases del caso prima facie bajo A.D.E.A. —de que el empleado fue despedido y estaba
cualificado para el puesto— están subsumidos dentro del hecho básico de que el
despido fue sin justa causa —expresamente expuesto en el Art. 3 de nuestra Ley
Núm. 100, *supra*, 29 L.P.R.A. sec. 148—, no cabe la conclusión de que el concepto
*justa causa* incluye en la modalidad de este discrimen, *el hecho básico de que el
empleado fue sustituido por otro que no pertenece al grupo protegido.*

A nuestro juicio, este elemento es fundamental para crear la conexión racional
entre los hechos básicos y el presumido. Aunque flexible y adaptable a cada situación
fáctica particular, no implica que podamos eliminarlo. En la jurisdicción federal, su
trato flexible se ha limitado a buscar modalidades en lugar de eliminarla. *Johnson v.
Runyon*, 137 F.3d 1081 (8vo Cir. 1998); *Ruiz v. Posadas de San Juan Associates*, 124
F.3d 243 (1er Cir. 1997); *DiBiase v. Smithkline Beecham Corp.*, 48 F.3d 719 (3er Cir.
1995).

Reiteramos que para que nuestra presunción de discrimen por edad cumpla las
exigencias del debido proceso de ley y provea conexión racional entre el hecho pre-
sumido y los hechos básicos, es necesario activarla de la forma que la jurisprudencia
federal ha concebido es constitucionalmente apropiada. "[E]l caso prima facie de
discrimen [bajo A.D.E.A.] constituye una especie de presunción." *Ibáñez v. Molinos de
P.R., Inc.*, supra, pág. 48. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993);
*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). La presunción de
la Ley Núm. 100, *supra*, como alternativa a la falta de prueba directa o circunstan-
cial de discrimen, tiene que ajustarse a los parámetros constitucionales.

*presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fund[ado] en* que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno". (Énfasis suplido.) *En esa etapa, el juez puede aquilatar la prueba presentada por el demandante y* formular su apreciación de los hechos según la credibilidad que le merezca. Si hay dudas, *preferible que niegue desestimar y permita al demandado presentar su caso. Roselló Cruz v. García,* 116 D.P.R. 511 (1985); *Colombani v. Gob. Municipal de Bayamón,* 100 D.P.R. 120 (1971); *Irizarry v. A.F.F.,* 93 D.P.R. 416 (1966).

De los autos se desprende, que justo al momento en que Sandoval Rivera sometió su caso, *el Hotel solicitó la desestimación de la reclamación bajo la Ley Núm. 100, supra.* Indicó que "[d]el registro no se desprende en modo alguno que el Sr. Sandoval haya establecido en su prueba, ya sometida, *en modo alguno que fue sustituido por una persona más joven. Ni siquiera estableció que haya sido sustituido, punto.* Ante eso, Vuestro Honor, entendemos que no existe un caso 'prima fa[ci]e' y se debe desestimar la demanda". T.E., 27 de diciembre de 1996, págs. 6-7.

Al negarse, el tribunal indicó que "[e]n este caso el Tribunal ... bajo la moción de ... [des]estimación, *tendríamos que determinar que bajo la prueba desfilada, él no tiene derecho a ningún remedio, a ninguno. Y el Tribunal entiende que no".* (Énfasis suplido.) T.E., 27 de diciembre de 1996, pág. 14.

*No obstante, optó por oír la prueba:*

*Porque mire ... ha habido casos que hasta la propia prueba .... la demandada ha presentado prueba que los ha condenado. Y yo he resuelto casos hasta con la prueba de la parte demandada.* Comete un error, pasa la prueba y después le probaron el caso a la persona, mala suerte para ellos y así hay muchos casos.

*Y después de diecinueve (19) años aquí, esa no es la primera vez que una parte demandada comete errores que prueba casos*

> *al demandante. Y acuérdese que aquí puedo hacer diferencia, puedo hacer veinte mil cosas que son válidas en derecho. Porque como le dije, el discrimen, eso es prueba circunstancial, prueba... nadie hace las cosas abiertamente para que después le puedan radicar demandas y cosas. Todo es solapado, en una forma muy calladita para que no pase nada.*
>
> Así que yo ... sin lugar la desestimación y yo voy a oír la prueba. (Énfasis suplido.) T.E., 27 de diciembre de 1996, págs. 14–15.

Subsiguientemente, al aquilatar *toda* la prueba, reiteró su criterio original y concluyó igualmente *que Sandoval Rivera no probó prima facie su caso de discrimen.* Ante este trasfondo, no debió negarse a desestimar *la reclamación de discrimen* cuando se le solicitó. Mucho menos, basado en la posibilidad de que, por error, el querellado probara el caso de discrimen. *Como hemos dicho, la carga de producir evidencia y establecer los hechos básicos corresponde al reclamante, no querellado*, y aquí el tribunal indicó no tener dudas de que con la prueba desfilada por Sandoval Rivera, no tenía derecho a ese remedio.

## IV

Finalmente, estamos convencidos de que el juzgador de hechos aquilató y adjudicó integralmente la prueba y la credibilidad de todos los testigos, aun cuando no se expresó detalladamente sobre toda la prueba desfilada. *Los procesos y adjudicaciones judiciales no se dan en el vacío. Primero*, una lectura de la transcripción de evidencia revela *la activa e incisiva actuación del juez a lo largo de todos los procedimientos*; en ocasiones, incluso contra el deseo de las partes. Muestra suficiente de que escuchó, aquilató y dirimió la prueba. *Segundo*, el hecho que en sus determinaciones de hechos, no se expresara sobre cada testimonio o pieza de evidencia, *no implica que no descargó su deber de aquilatar la evidencia. Nunca hemos exigido por regla o jurisprudencia semejante exposición específica. Tercero*, si algo está claro es que en su dictamen final, *el respetable*

*juzgador adjudicó la credibilidad que le merecieron los testigos, función que por regla general debemos respetar a menos que haya mediado prejuicio o error manifiesto.*

Actuó correctamente el Tribunal de Primera Instancia al desestimar la *reclamación de discrimen por edad* luego de aquilatar la prueba y determinar que Sandoval Rivera no estableció un caso prima facie que activara la presunción.

Proveeríamos no ha lugar a la reconsideración.